FILED ENTERED
LODGED RECEIVED

AUG 03 2026 T.N.

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

Steven M. Rindal
Dorothy J. Rindal
In Propria Persona
15461 State Route 9
Mount Vernon, WA 98273
Plaintiffs, Pro Per

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| Steven M. Rindal and Dorothy J. Rindal, husband and wife,<br>Plaintiffs,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; JULIE MEREDITH, P.E., Secretary of Transportation, in her individual and official capacities; SPENCER BEIER, P.E., in his individual and official capacities; MIKKEL LAMAY, P.E., in his individual and official capacities; INTERWEST CONSTRUCTION, INC., a Washington corporation; and DOES 1 through 10,<br><br>Defendants. | **No.** 26-CV-02734-KKE<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR DAMAGES UNDER 42 U.S.C. § 1983<br><br>TRIAL BY JURY DEMANDED |

## I. NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983. It arises from the physical occupation, excavation, and destruction of a family homestead that the State of Washington never purchased, never condemned, and never had any lawful right to enter.

2. For more than forty five years the Washington State Department of Transportation ("WSDOT" or "the Department") has solved its own drainage problem on the land of Steven M. Rindal. The Department installed a cross-culvert beneath State Route 9 and used it to discharge

It never obtained permission. It never paid a dollar. Year after year, the discharge carved a depression through pasture that held no watercourse: none now, and none in living memory.

3. Having manufactured a hydraulic condition on another man's land, the Department has now given it a new name. What was a drainage outfall is today a "tributary to Nookachamps Creek," and its correction is a "fish passage" project: Contract XE3670, *SR 9, Unnamed Tributary to Nookachamps Fish Passage*, at or about milepost 49 east of Mount Vernon.

4. There is no stream. There is no streambed. There is no spring. There is no natural hydrologic connection between State Route 9 and Nookachamps Creek across Plaintiff's land. Between the highway and the creek, some 300 feet below the road grade, the water must cross dry pasture and reach the embankment of a railroad tram that has stood for more than 110 years. No bridge spans that embankment and no culvert passes it. Its only opening of any kind is a single pipe approximately four inches in diameter, set low in the embankment closer to Nookachamps Creek than to Plaintiffs' home, of unexplained origin and purpose. No adult salmon can pass through a four inch pipe. No salmon has ever ascended past that embankment, and none can. The only water that has ever traversed that ground is water WSDOT put there. The Department is now enlarging the culvert that produced the problem, enlarging the ditch the problem produced, and cutting the highway itself open to install a bridge approximately twenty feet in span, in place of a cross-culvert approximately two to three feet across, to carry fish that cannot get there. It calls the result salmon habitat.

5. This action does not ask this Court to stop the correction of a fish passage barrier beneath a state highway. It asks this Court to hold something narrower and older: that a public project, however worthy its purpose, does not license the State and its contractor to occupy, excavate, and strip land they do not own.

6. On July 2, 2026, they did exactly that. Defendants' equipment, including a Caterpillar 305.5E2 compact excavator fitted with a hydraulic breaker, bearing unit marking 06-124, was operating approximately fifty yards, some 150 feet, inside Plaintiff's property line, past the staked and flagged NO TRESPASSING markers Plaintiffs had posted along the frontage. That

ground lies, as Plaintiff is informed and believes and as the Department's own survey and construction staking records will establish, beyond the boundary of the temporary construction easement under which Defendants claim authority; in any event, it was put to uses, and toward permanent works, that the easement does not permit. They stripped the ground. They destroyed the vegetation. They drove grade stakes and construction fencing into Plaintiff's soil. And they pushed over a staked NO TRESPASSING sign, a sign bearing an affixed written Notice to Cease and Desist.

7. And they took the tree. A mature sequoia, approximately eighty feet tall, stood on the Rindal homestead. Plaintiff identified it to the Department in writing. Its dripline was marked on the ground. Plaintiff notified the Department, by mail and by electronic mail, that the tree and its dripline were not to be disturbed. He notified Julie Meredith, P.E., the Secretary of Transportation of the State of Washington: personally, directly, by name. Secretary Meredith did not stop the work. On information and belief, the contractor said the tree was in the way. Within approximately thirty-two hours of that notice, the sequoia was cut down.

8. That conduct, and only that conduct, is what this Complaint is about. Not the merits of salmon recovery. Not the wisdom of the State's transportation program. The taking of land without payment. The destruction of property after written warning. And the deliberate indifference of the Department's highest officer to a citizen's written plea to leave his homestead alone.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3), because it seeks redress for the deprivation, under color of state law, of rights secured by the Constitution of the United States.

10. Plaintiff's claims for relief arise under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

11. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and injunctive relief under Fed. R. Civ. P. 65.

12. This Court has supplemental jurisdiction over the state-law claims pleaded in Counts X through XIII under 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III. Consistent with *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the state-law counts are asserted only against Defendant Interwest Construction, Inc., against Does 1 through 10, and against the individual Defendants in their individual capacities, and are not asserted against the Department or against any official in an official capacity.

13. No exhaustion of state remedies is required. *Patsy v. Board of Regents*, 457 U.S. 496 (1982). A federal takings claim is ripe the moment the government takes property without paying for it. *Knick v. Township of Scott*, 588 U.S. 180 (2019).

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the property that is the subject of this action lies in Skagit County, Washington, and substantially all of the events and omissions giving rise to the claims occurred there. Skagit County lies within the Western District of Washington.

15. Plaintiffs will file a Notice of Related Cases identifying *Rindal v. State*, No. 2:24-cv-01805-RAJ (dismissed August 8, 2025); *State of Washington v. Rindal*, No. 2:25-cv-01347-TL (remanded September 26, 2025; appeal pending, Ninth Circuit No. 25-6742); and *Rindal v. State of Washington*, No. 2:26-cv-971 (dismissed and closed; judgment entered April 16, 2026). None of those actions litigated, and none could have litigated, the July 2026 conduct at the core of this Complaint.

## III. PARTIES

16. Plaintiff STEVEN M. RINDAL is a natural person and a citizen of the United States residing in Skagit County, Washington. He appears in propria persona. He is an owner of record of Skagit County tax parcel P27649, identified in WSDOT right-of-way records as Parcel

1-25360, commonly known as 15461 State Route 9, Mount Vernon, Washington 98273 (the "Property"). Plaintiffs acquired the Property in or about 1979 and have held and worked it as their family homestead for over four and a half decades.

17. Plaintiff DOROTHY J. RINDAL is a natural person and a citizen of the United States residing in Skagit County, Washington. She appears in propria persona. She is the wife of Steven M. Rindal and an owner of record of the Property, and holds her interest with him as marital community property. She joins in every claim asserted in this Complaint. References in this Complaint to "Plaintiff" include both Plaintiffs as their interests appear, and references to notices given, observations made, and photographs taken refer to the Plaintiff who gave, made, or took them, as set out in the supporting declarations.

18. Defendant WASHINGTON STATE DEPARTMENT OF TRANSPORTATION is an agency of the State of Washington. WSDOT designed, permitted, funded, let, and supervises Contract XE3670 and the works complained of. WSDOT is named as a Defendant for declaratory relief and prospective injunctive relief only. No claim for money damages is asserted against the Department.

19. Defendant JULIE MEREDITH, P.E., is and at all relevant times was the Secretary of Transportation of the State of Washington. She is sued in her individual capacity for damages and in her official capacity for prospective injunctive and declaratory relief only, under *Ex parte Young*, 209 U.S. 123 (1908).

20. Defendant SPENCER BEIER, P.E., is and at all relevant times was the WSDOT Mount Vernon Project Engineer responsible for the works complained of, and issued the Notification of Work Start Date dated April 3, 2026. He is sued in his individual capacity for damages and in his official capacity for prospective relief only.

21. Defendant MIKKEL LAMAY, P.E., is and at all relevant times was a WSDOT Project Engineer with responsibility for the works complained of, and authored correspondence to Plaintiff dated August 6, 2025. He is sued in his individual capacity for damages and in his official capacity for prospective relief only.

22. Defendant INTERWEST CONSTRUCTION, INC. ("ICI") is, on information and belief, a Washington corporation with its principal place of business in Burlington, Skagit County, Washington, and is the general contractor performing Contract XE3670. ICI is a private party. ICI acted under color of state law within the meaning of 42 U.S.C. § 1983 by acting jointly and in concert with WSDOT and its officials, pursuant to state authority and under state direction and supervision, in occupying and excavating land the State had no right to enter. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

23. DOES 1 through 10 are persons whose identities are not presently known to Plaintiff, including without limitation the individual operators, foremen, superintendents, subcontractors, inspectors, and licensed professional engineers who personally directed, performed, approved, or ratified the entry, the excavation, the destruction of the posted notice, and the cutting of the sequoia. Plaintiff will amend to state their true names upon discovery.

24. At all relevant times each individual Defendant acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Washington, and within the scope of authority conferred upon that Defendant by the State.

## IV. WHAT THIS COMPLAINT DOES NOT SEEK

25. So that there is no confusion at the threshold, Plaintiff states expressly:

26. Plaintiff does not seek review, reversal, vacatur, or modification of any judgment of the Skagit County Superior Court, including the Judgment and Decree entered in *State of Washington v. Rindal*, No. 24-2-00898-29. This is not a de facto appeal from a state judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005); *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003).

27. Every claim in this Complaint arises from one of two independent sources: (a) conduct occurring on land lying outside the boundary of any area described in that judgment and outside any WSDOT right of way; or (b) the Department's discharge of highway drainage onto


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

the Property, which began decades before that action was filed and was neither litigated in it nor compensated by it. Neither category requires this Court to disturb any state judgment.

28. Plaintiff does not ask this Court to enjoin the correction of a fish passage barrier beneath State Route 9, and does not ask this Court to interfere with any order entered in *United States v. Washington*. Plaintiff asks only that Defendants be confined to land they lawfully hold. No federal injunction directed at the State of Washington purports to authorize the occupation of private property that the State has not acquired, and Plaintiff is informed and believes that no such injunction so provides.

29. The core conduct alleged occurred on and after July 2, 2026. By that time, every prior federal action identified in Paragraph 15 had ended or been remanded: the most recent, No. 2:26-cv-971, was dismissed and closed by judgment entered April 16, 2026, more than ten weeks before Defendants' equipment crossed the property line, the sequoia was cut, and the stump was carried away. A closed case cannot adjudicate conduct that had not yet occurred. These claims could not have been brought in any of those actions, and no judgment in them reaches the conduct pleaded here.

## V. FACTUAL ALLEGATIONS

### A. The Property

30. The Property is the Rindal family homestead in Skagit County, Washington: tax parcel P27649 (WSDOT Parcel 1-25360), at 15461 State Route 9, Mount Vernon, Washington. It abuts State Route 9 on the west.

31. In its natural condition the Property is dry upland pasture. There is no spring on it. There is no live stream on it. There is no natural watercourse crossing it. There is no channel, bed, or bank of natural origin anywhere between State Route 9 and the Property's lower boundary. Plaintiffs have observed the ground in every season of every year for over four and a half decades, and it has never been otherwise.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

32. The Property sits at an elevation substantially above the Nookachamps drainage. The ground falls roughly 300 feet from the highway grade to the receiving water, and the nearest natural watercourse lies approximately one-half mile distant.

33. Between the highway and any receiving water, any flow must cross open dry pasture and encounter the embankment of a railroad tram that has been in place for more than 110 years. No bridge, culvert, or fish passage structure of any kind exists in, over, or under that embankment. Its only opening is a single pipe approximately four inches in diameter, positioned low in the embankment nearer Nookachamps Creek than the residence, whose origin and purpose no party has explained. A four inch pipe is not a fish passage structure and cannot pass an adult salmon. The embankment was never designed to pass water. It has never passed fish. Today the embankment is densely overgrown, to the point that it cannot be crossed or even closely approached on foot. A barrier that a grown man cannot get through is not a passage that salmon swim.

34. The embankment is not a short crossing. It runs the full length of Plaintiffs' property, roughly one half mile, from State Route 9 to the neighboring parcel. Along that entire distance the four inch pipe is the only penetration known to Plaintiffs.

35. Plaintiffs own the ground the embankment stands on, and that ownership has already been contested once and upheld. Plaintiffs acquired the Property in or about 1979, over four and a half decades ago. In that same year the railroad removed the steel rails and abandoned the line. Upon abandonment the railroad's interest terminated and the corridor reverted to the underlying fee owners, Steven M. Rindal and Dorothy J. Rindal.

36. Years afterward, Skagit County sought to appropriate the abandoned corridor for use as a public trail. Plaintiffs and their neighboring owners along the corridor jointly retained an attorney and asserted their ownership, and the matter was resolved in the owners' favor: the County did not acquire the corridor. Plaintiffs' title to the former railroad right of way is therefore not a novel position taken for this litigation. It is a position they have maintained for


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

decades, asserted through counsel, and successfully defended against a public body that wanted the same ground for a public purpose.

37. The instrument attached as Exhibit O reflects that ownership. It describes one of the conveyed parcels as "the Westerly 1/2 of that portion of that certain 100-foot wide strip of land conveyed to the Seattle Lake Shore and Easterly Railway Company by deed dated 7-12-1890 and recorded 7-16-1890 in volume 10 of deeds pages 688 and 689," the customary description of a former railroad corridor held to the centerline by the adjoining owner.

38. The State acquired no interest in that corridor. The temporary construction easement does not include the former railroad right of way. Defendants hold no right to enter it, to open it, or to alter it, and the Project proposes nothing there. The one structure that actually stops fish stands on land the State never sought, never condemned, and never paid for, and the State is spending millions of public dollars upstream of it.

39. The consequence is dispositive of the Project's stated purpose. Salmon ascending from Nookachamps Creek cannot pass the railroad embankment. They cannot reach Plaintiff's pasture. They cannot reach the State Route 9 culvert that Defendants are replacing, at a cost of millions of dollars, in order to admit them. Correcting the highway culvert opens no habitat to any fish, because no fish can arrive at it. On information and belief, Defendants have performed no assessment establishing that salmon can pass the railroad embankment, and Defendants do not propose to correct that embankment as part of the Project. The Project's own reconstructed channel does not even reach it: the temporary easement, and the channel it authorizes, end approximately halfway across the pasture. The barrier that matters stands below, and the Project leaves it standing.

**B. Thirty years of uncompensated discharge**

40. More than thirty years ago, WSDOT installed a cross-culvert beneath State Route 9. It has maintained that culvert ever since, and to this day the culvert collects and concentrates highway stormwater and discharges it onto the Property.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

41. On information and belief, the cross-culvert was installed before Plaintiffs acquired the Property in 1979. Plaintiffs do not contend that the original installation, standing alone, is actionable now. They plead three things about it that are.

42. First, the State never acquired anything. In all the decades that culvert has discharged onto this land, WSDOT has never obtained an easement, never recorded an instrument, never sought the owner's permission, and never paid a dollar. Its own conduct confirms this. In 2024 the State filed a condemnation action to acquire rights in this Property. A party that already holds the rights it needs does not condemn to obtain them. The Attorney General's letter of July 7, 2026 likewise rests the State's authority entirely on the condemnation judgment and asserts no easement by prescription or otherwise.

43. Second, the invasion is continuing, not completed. Each discharge is a fresh physical entry of foreign water, sediment, and roadway pollutants onto the Property. Plaintiffs seek redress for invasions occurring within the limitation period and continuing to the present, not for events of the 1970s.

44. Third, and most importantly, the Project materially enlarges the burden. Defendants are replacing the existing culvert with a larger one and constructing an enlarged channel to receive its output, so that a greater volume and velocity of water will be discharged onto Plaintiffs' land, through permanent works, in perpetuity. Whatever condition existed when Plaintiffs bought this land in 1979, they did not buy it subject to enlarged, reconstructed, permanent drainage works installed under color of a temporary easement in 2026. An increased and permanent physical invasion is a new taking, and no passage of time authorizes it.

45. WSDOT holds no easement over the Property for drainage. It has no recorded instrument permitting that discharge. It has no permit, license, or agreement with Plaintiff permitting that discharge. It has never obtained Plaintiff's permission. It has never paid compensation for that discharge.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

46. Each discharge has been a physical invasion: foreign water, sediment, road oils, and roadway pollutants sent onto Plaintiff's land. The invasion has recurred for decades. It continues as of the filing of this Complaint.

47. Year upon year, that concentrated discharge scoured a depression through the pasture. The depression is an artifact of the Department's stormwater practice, and nothing more. It is not a stream. It carries no water except the water the Department sends down it.

48. In origin and in function, the depression is an artificial stormwater conveyance: a ditch cut by the Department's own runoff across ground that held no watercourse. It is not a natural watercourse that human activity later altered. It did not exist before the Department's culvert, and if the culvert were closed tomorrow it would carry nothing. Defendants possess no survey, no map, no hydrologic study, and no other record showing a natural watercourse crossing the Property before the culvert was installed, and Plaintiff is informed and believes that none exists.

**C. The manufactured "tributary"**

49. The Department and the Washington Department of Fish and Wildlife have nonetheless designated the ground receiving that discharge an "unnamed tributary to Nookachamps Creek."

50. Washington law draws precisely the distinction the Department has ignored. The State's own hydraulic code defines the "bed" of state waters as "the land below the ordinary high water lines of state waters," and provides that the definition "does not include irrigation ditches, canals, stormwater runoff devices, or other artificial watercourses except where they exist in a natural watercourse that has been altered artificially." RCW 77.55.011(1); *accord* WAC 220-660-030(14). "Waters of the state" are in turn defined as "all salt and fresh waters waterward of the ordinary high water line." RCW 77.55.011(26). And a "hydraulic project" means "the construction or performance of work that will use, divert, obstruct, or change the natural flow or bed of any of the salt or fresh waters of the state." RCW 77.55.011(11).


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

51. The feature the Department calls a tributary is a stormwater runoff device and an artificial watercourse in the statute's own vocabulary. The exception does not reach it. The exception requires a natural watercourse that human activity later altered, and there was none: Plaintiff's pasture held no watercourse to alter. Under the classification the State itself applies to features of this kind, the ditch cut by the Department's highway drainage is not the bed of waters of the state.

52. The Department cannot have the benefit of both characterizations. For thirty years it treated the discharge from its own stormwater runoff device as a mere drainage ditch, incurring no obligation to acquire an easement and no obligation to pay compensation. It cannot now declare that same ditch a tributary of the state's waters, invested with natural dignity sufficient to justify condemning a family homestead and excavating it for salmon that cannot reach it.

53. On that renaming the Project rests. Contract XE3670, *SR 9, Unnamed Tributary to Nookachamps Fish Passage*, provides for replacing and enlarging the SR 9 cross-culvert, and for constructing and enlarging a channel downslope from it, through the very depression the Department's own discharge carved, across Plaintiff's pasture.

54. On information and belief, the project at the Nookachamps site is part of a combined contract with a second site at milepost 59, is valued at approximately $5.7 million in combined federal and state funds, commenced construction on or about June 29, 2026, and is being performed by Defendant ICI.

55. The premise of the project is false. There is no tributary. There is a ditch the State cut with its own runoff on another man's pasture. Enlarging that ditch does not restore habitat that never existed; it perfects an uncompensated drainage easement the State never bought, and it does so under an environmental label that makes the taking harder to see and harder to question.

56. The Department's own drainage obligation, its duty to manage the water it collects from the state highway prism, is being discharged on private land, at private expense, under color of salmon recovery.

**D. What the federal injunction does and does not authorize**


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

57. Plaintiff is informed and believes that WSDOT asserts that the Nookachamps site is included in a permanent federal injunction entered in *United States v. Washington*, directing the State to correct fish passage barriers beneath state-maintained roads. *See United States v. Washington*, 853 F.3d 946 (9th Cir. 2017), *aff'd by an equally divided Court*, 138 S. Ct. 1832 (2018).

58. That injunction directs the State to correct barriers under state-maintained roads. It does not convey to the State any interest in private land. It does not grant an easement. It does not authorize entry beyond the state right of way. It does not authorize excavation on land the State has not acquired. It does not authorize the destruction of a private landowner's trees. It does not repeal the Fifth Amendment.

59. A court order requiring the State to fix its own culvert is not a warrant to take a neighbor's pasture. Defendants have treated it as one.

60. The injunction's own terms confirm its limits. As the Ninth Circuit described the district court's order, WSDOT must provide fish passage within seventeen years for each barrier culvert "with more than 200 linear meters of salmon habitat upstream to the first natural passage barrier," while culverts "above which there was less than 200 linear meters of accessible salmon habitat" need be replaced "only at the 'end of the useful life' of the culverts, or sooner 'as part of a highway project'", and correction of a further share of high-priority culverts may be deferred to that more lenient schedule altogether. *United States v. Washington*, 853 F.3d 946 (9th Cir. 2017).

61. The premise of that priority scheme is natural salmon habitat upstream of the culvert. Upstream of the SR 9 cross-culvert at this site there is no natural salmon habitat. There is Plaintiff's dry upland pasture, and there is an artificial depression carved across it by the Department's own decades of unauthorized discharge. On information and belief, the "upstream habitat" invoked to justify priority correction of this culvert is the Department's own drainage, a condition the Department created on land it did not own and has never compensated. An injunction directed at barriers blocking salmon-bearing streams is not implicated by, and does not command the enlargement of, a drainage ditch the State itself unlawfully cut.

62. The Ninth Circuit was explicit that the injunction is not rigid: "It is possible that, during this extended period, changed or newly revealed facts or circumstances will justify a modification of the injunction. The district court should not hesitate to modify its injunction if this proves to be the case." *Id.* Plaintiff does not seek any modification of that injunction in this action, and asks nothing of this Court concerning it. Plaintiff notes only that the injunction is neither the source of authority nor the source of urgency that Defendants portray.

63. Nor does the injunction dictate this design. On information and belief, the Department's drainage and fish-passage obligations at this site can be discharged within the State's own right of way, including by conveying the collected drainage along the State's own corridor to Nookachamps Creek, approximately one-half mile distant, without occupying, excavating, or permanently altering private land. The injunction requires the State to correct its culvert. It does not require the State to correct it on Plaintiff's land, and it does not make Plaintiff's pasture a free construction site.

**E. The temporary construction easement: its limits, its conditions, and what it cannot authorize**

64. The interest the State acquired in the Skagit County condemnation action was not fee title. It was a temporary construction easement of approximately 55,404 square feet, described in the easement description attached to the Judgment and Decree of Appropriation entered June 16, 2025 (Exhibit A hereto), which by its own terms terminates on December 31, 2029.

65. The easement's own geography betrays the Project's purpose. On the face of the recorded Temporary Easement Exhibit, the easement area extends from the State Route 9 culvert only part way across Plaintiffs' pasture, terminating in the vicinity of the residence, at most approximately halfway to the railroad tram embankment. The tram itself lies so far beyond the easement that it does not appear anywhere within the frame of the Department's own exhibit map; the nearest the exhibit comes to it is a tree line at the far corner of the aerial image. The reconstructed channel ends where the easement ends: in the middle of dry pasture, far short of the only receiving water. Beyond that line the State has acquired no interest, designed no channel, and proposes no work: none across the remaining distance to the tram, none through the

tram, none from the tram to Nookachamps Creek. A fish passage project that ends halfway across a dry field is not a fish passage project. It is a drainage outfall with a longer tail. The Department's highway runoff will be carried to the easement's edge and released there onto the remainder of Plaintiff's land, exactly as it has been for thirty years, only in greater volume and through a larger culvert.

66. The easement is subject to express written conditions, including: that the State's use and occupancy of the easement area during construction be limited to no more than twenty-two consecutive months; that the State provide a minimum of thirty days' written notice prior to commencement of construction; and that upon completion of construction the State remove all debris and restore the surface of the easement area to a condition as close as practicable to its condition before the work.

67. The $51,000 award was deposited into the registry of the Superior Court on or about July 2, 2025. Plaintiff has never withdrawn, accepted, or cashed any portion of those funds. Plaintiff appeared specially in the condemnation action and objected to the court's jurisdiction, and an appeal is pending in the Washington Court of Appeals, Division I, No. 87870-1. Nothing in this Complaint asks this Court to review that judgment; these facts are pleaded to show that Plaintiff has never accepted the compensation and has never acquiesced in the taking.

68. By letter dated July 7, 2026, the Attorney General of Washington, responding on behalf of the Department and of Secretary Meredith, stated in writing: "WSDOT will not cease construction absent a court order." Plaintiff takes the Department at its word. This Complaint seeks that order, confined, as set out below, to conduct the easement does not authorize.

69. The same July 7, 2026 letter enclosed what the Attorney General described as the Department's sight distance analysis for the relocated driveway. On their faces, those enclosures are not an engineering study. They consist of plan sheets whose title blocks are marked "PRELIMINARY PLAN" with the signature and date blocks empty; fill-in-the-blank template diagrams from the Department's own design materials with handwritten values; and internet street-view screenshots. No enclosure bears the stamp or seal of a licensed professional engineer.

The Department's own driveway access exhibit even labels the roadway "SR 20," though the Project, the driveway, and the Property are on State Route 9.

70. The Skagit County record includes a public finding, made at a hearing on February 26, 2024, that no sight-distance engineering under the applicable chapters of the WSDOT Design Manual existed for the proposed driveway relocation. More than two years later, the Department's response to that finding is a packet of unstamped preliminary sheets and manual pages. The existing driveway connection was nonetheless closed on or about June 5, 2026, and as of July 2, 2026 the replacement connection had not been completed. Plaintiffs' access to their homestead now depends on a relocated connection that no licensed engineer has certified as safe.

71. A temporary easement authorizes temporary uses. The works Defendants are constructing on the Property are not temporary. Defendants are excavating and enlarging a permanent channel, installing a permanent bridge structure approximately twenty feet in span, installing permanent large woody material, and permanently modifying what the easement calls "the course and profile of the waterway" (a waterway that is in fact the Department's own drainage), so that the Property will receive and convey State Route 9 highway drainage in perpetuity, long after the easement expires on December 31, 2029. No one builds a bridge for a right that is about to expire. These works are designed to remain.

72. When the temporary easement terminates, the permanent works will remain: a constructed channel occupying Plaintiff's pasture, dedicated to public use as fish habitat and as the outfall for a state highway's drainage, on land in which the State will then hold no interest at all. The State condemned a temporary right and is building a permanent occupation. The difference between the two is a permanent physical occupation of private land, never acquired and never compensated, and that is precisely what the Fifth Amendment forbids.

73. In the same July 7, 2026 letter, the Attorney General asserted that the easement area "is inclusive of the area in your pictures." Plaintiff disputes that the disturbance of July 2, 2026 was confined to the easement area; the Department's own survey control, right-of-way plans, and construction staking records, which the Department possesses and which Plaintiffs will obtain,


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

will establish the fact. But the easement's boundary lines do not answer this Complaint in any event: conduct that exceeds the easement's scope, violates its express conditions, or erects a permanent occupation under color of a temporary right is unlawful wherever within those lines it occurs. Under Washington law, use of an easement in excess of its scope and terms is a misuse of the easement. *Brown v. Voss,* 105 Wn.2d 366, 715 P.2d 514 (1986).

**F. The severed water and mineral estate**

74. Prior to the commencement of the state condemnation action, Plaintiff and Dorothy J. Rindal conveyed to the JA77 Trust of Charlestown, of Charlestown, Nevis, West Indies, Saint Paul Parish, their undivided interest in the water rights and in the oil, gas, sulfur, and other minerals in the Property, by a Mineral and Royalty Interest Deed executed and notarized on February 20, 2024, more than six months before the condemnation action was commenced. The deed covers the Property and two adjoining parcels, and in it the Grantors covenanted "to keep the Lands undisturbed for the Grantee's future use." Plaintiff is not a trustee of the JA77 Trust and does not appear here on its behalf.

75. Plaintiff is informed and believes that the JA77 Trust was named as a defendant in the Skagit County action, and is listed in the Judgment Summary as a judgment creditor, yet was never actually served with a summons at its address in Nevis, never notified, never appeared, and was never heard, notwithstanding that Plaintiffs had told the State exactly who the Trust was and where to find it. On February 26, 2024, six days after the deed was executed, Steven M. Rindal read into the record of the hearing in the condemnation matter a Notice, sworn under 28 U.S.C. § 1746, stating that "the State of Washington has not notified a third party with interest in the land in question, specifically JA77 Trust," identifying the Trust as located at "Charlestown, Nevis, West indies, Saint Paul Parish," and demanding that the failure to notify the Trust "be rectified immediately." The State thus had actual notice, on the record, in the very proceeding by which it took this land. It did not lack knowledge of the Trust or of where the Trust could be found; the State's own July 7, 2026 letter and its own Judgment Summary both name it. *Cf. Mullane v.*

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950); *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988).

76. This matters to Plaintiff's own claims in a specific way. The project Defendants are building on Plaintiff's land is a water-dependent project. Defendants are excavating a channel to convey and impound water, and are disturbing and removing subsurface substrate, in a parcel in which the water estate and the mineral estate are severed and held of record by another. Defendants' entry is therefore unauthorized not only as to the surface Plaintiff holds, but as to estates no Defendant has acquired from anyone.

77. There is an old and plain name for digging into ground whose mineral estate belongs to someone else: claim jumping. Plaintiff uses the phrase here as description, not as a separate legal theory; the enforceable rule in Washington is statutory. RCW 4.24.630(1) imposes treble damages, investigative costs, and reasonable attorneys' fees on every person who wrongfully "removes timber, crops, minerals, or other similar valuable property from the land" of another. Defendants were told, in writing and on posted notice, that the mineral and water rights beneath their excavators belonged to the JA77 Trust. They excavated anyway. The Trust's own claims for injury to its severed estates are the Trust's to assert, and are not asserted in this action; Plaintiff pleads these facts because they establish that Defendants proceeded with actual knowledge that they had acquired the rights of neither the surface owner beyond the easement nor the severed-estate holder anywhere.

**G. Notice given, and notice ignored**

78. On or about March 21, 2026, a written Notice to Cease and Desist and Demand for Evidence Preservation was served upon the contractors and engineers responsible for the works. Seventeen staked NO TRESPASSING signs were posted across the Property's entire State Route 9 road frontage, and a copy of the written Notice was physically affixed to each of the seventeen stakes. Each stake was tagged with fluorescent orange surveyor's tape. No person could approach the Property from the highway at any point without passing a marked, flagged, written warning. The Notice stated on its face that the Property's mineral and water rights are held by the JA77


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

Trust, and warned that any excavation, grading, or removal of soil, gravel, rock, minerals, or substrate from the Property would be treated as mineral trespass, claim jumping, and would subject those responsible to civil liability, including treble damages under RCW 4.24.630.

79. On or about April 7, 2026, Plaintiff sent a detailed sixteen-page letter to Defendant Secretary Julie Meredith, P.E., by certified mail and by electronic mail, addressed to the Department's failure of oversight, the thirty years of uncompensated drainage, the absence of required sight-distance engineering, and the litigation hold. The letter made six numbered requests and demanded a response within fourteen days.

80. On or about April 10, 2026, Secretary Meredith replied in a single line: the letter had been received, and an existing litigation hold was already in effect. She never provided a substantive response to any of the six requests. The fourteen-day period expired on or about April 21, 2026. None has come since.

81. Among the matters brought to Defendants' attention in writing, by mail and by electronic mail, with physical markers placed on the ground at the dripline, was that a mature sequoia standing approximately eighty feet tall on the homestead, and the soil within its dripline, were not to be disturbed.

82. Secretary Meredith was personally and specifically notified about that tree. She had actual knowledge. She had the authority to stop the work. She did not use it.

83. On information and belief, the contractor asserted that the tree was in the way of the planned work, and Defendants elected to cut it rather than to move the work, redesign the alignment, or answer Plaintiff's written objection.

**H. July 2, 2026: the entry**

84. On or about July 2, 2026, Defendants entered upon the Property at a location approximately fifty yards, roughly 150 feet, inside Plaintiff's property line, past Plaintiffs' posted and flagged markers, on ground lying outside any WSDOT right of way and, as Plaintiff is informed and believes and as the Department's own survey and construction staking records will establish, beyond the boundary of the temporary construction easement described in the

easement description attached to the Judgment and Decree of Appropriation (Exhibit A hereto), and in any event devoted to uses, and to permanent works, that the easement does not authorize.

85. Present and operating on the Property was a Caterpillar 305.5E2 compact excavator fitted with a hydraulic breaker, bearing unit marking 06-124.

86. Defendants stripped the ground. They destroyed native vegetation and habitat. They drove grade stakes and construction fencing into Plaintiff's soil.

87. Defendants pushed over staked NO TRESPASSING signage bearing the affixed March 21, 2026 Notice to Cease and Desist, signage that stood among seventeen identical posted warnings spanning the road frontage, each carrying its own copy of the Notice and each flagged with fluorescent orange surveyor's tape. The act was witnessed and photographed. A construction crew does not miss seventeen orange-flagged stakes on the frontage it is clearing, and it does not push over a sign it has not seen. The destruction of that signage establishes that Defendants had notice of Plaintiff's objection and proceeded anyway, and it forecloses any claim of innocent or inadvertent entry.

88. The destruction of the posted sign and the affixed Notice, and the destruction of the Property's pre-existing natural condition, occurred while a litigation hold that Secretary Meredith herself had confirmed in writing on April 10, 2026 was in effect. Plaintiff reserves all rights as to spoliation, including under Fed. R. Civ. P. 37(e).

89. Photographs of the July 2, 2026 conditions, the property line at the barn front, the stripped ground approximately fifty yards inside the line, and the excavator on the Property, were taken on that date and are preserved. They are appended to this Complaint as **Exhibit C**.

### I. The sequoia

90. Within approximately thirty-two hours of the written notice described in Paragraphs 78 through 80, Defendants cut down the sequoia.

91. The tree was a mature specimen, approximately eighty feet in height, standing on the Rindal homestead. It gave shade, windbreak, screening, and ornament; it held historical and

homestead value; and it was irreplaceable in any human timeframe. An eighty-foot sequoia is not restored. It is regrown, over lifetimes.

92. The cutting was not casual. It was not involuntary. It was not the product of a mistaken belief that Defendants had a right to cut. Defendants had been told in writing, by mail and by electronic mail, that the tree and its dripline were not to be disturbed; the dripline had been physically marked on the ground; and the Secretary of Transportation had been personally notified. In addition, a written placard headed "NOTICE - PROTECTED TREE - GIANT SEQUOIA" was posted on a stake at the tree itself. The placard identified the tree by species, instructed that no person cut, girdle, nail, climb, hang from, compact soil near, or otherwise wound or endanger the tree, and quoted the applicable Washington law by name and number, including the timber trespass statute, RCW 64.12.030, and its treble-damages remedy. A crew standing at the trunk read a sign telling them the exact statute they were about to violate. Defendants cut the tree anyway, because a contractor found it inconvenient.

93. On information and belief, the sequoia stood outside the temporary easement area, or, at minimum, outside the approximately 4,300 square feet of "cut limits" identified on the Department's own Temporary Easement Exhibit. In the alternative, even if the tree stood within the easement area, its felling was not the clearing of vegetation "as needed" for construction within the meaning of the easement. It was the destruction, within approximately thirty-two hours of written protest, of the one tree Plaintiff had marked and named.

94. Defendants did not merely fell the tree. They hauled it away: trunk, limbs, and branches, carrying the timber off the Property and retaining none of it for its owner. Of an eighty-foot tree, the whole of what Plaintiff was able to salvage is a single small wedge of wood, cut loose at the ground and photographed beside the stump. Everything else they took. The taking of the wood itself is a separate act of removal and conversion: RCW 64.12.030 reaches one who "cuts down" or "carries off" timber, and RCW 4.24.630 reaches one who "removes timber . . . from the land" of another. Defendants did both.

95. The removal was also the removal of evidence. The trunk was itself evidence: its dimensions, its condition, and its rings proved the value of what was destroyed, in litigation Defendants knew was pending and under a litigation hold their own Secretary had confirmed in writing. Defendants carried that evidence away. Then they came back for the rest: on information and belief, after the stump and root plate had been photographed standing behind Defendants' own construction fencing, Defendants excavated the stump and root plate and removed them from the Property as well. The last physical evidence of the tree's age and size that remained on the ground (the growth rings a court could have counted) is gone, dug out and hauled off while the litigation hold stood. Plaintiff reserves all rights as to spoliation, including under Fed. R. Civ. P. 37(e), up to and including a request for adverse-inference instructions that the destroyed evidence would have established the tree's age, size, condition, and value against Defendants' interest.

96. What survives is this: the dated photographs of the standing tree; the dated photographs of the stump and root plate, taken while they still stood behind Defendants' own orange construction fencing; and the single salvaged wedge, which remains in Plaintiff's custody and preserves ring and condition evidence. That wedge is now the only physical remnant of the sequoia in existence outside Defendants' control, and Defendants are responsible for the disappearance of all the rest.

**J. Continuing conduct**

97. Defendants' occupation and excavation of the Property beyond the boundary of any interest they hold is continuing. Defendants' discharge of highway drainage onto the Property without easement or compensation is continuing.

98. The principal excavation is now imminent. Defendants have posted signs announcing that State Route 9 will be completely closed at this site from August 12 through August 19, 2026, while the highway is cut open to install the bridge, approximately twenty feet in span, in place of the existing cross-culvert, approximately two to three feet across. During and after that

closure Defendants will, unless restrained by this Court, further occupy, excavate, and permanently alter portions of the Property outside any interest they hold.

99. Each further day of entry inflicts fresh and separate injury upon interests that no later payment of money can restore: the right to exclude, and the integrity of a family homestead.

## VI. CLAIMS FOR RELIEF

COUNT I

42 U.S.C. § 1983, Taking of Private Property Without Just Compensation

(Fifth and Fourteenth Amendments, Physical Occupation Outside Any Acquired Interest)

*Against Meredith, Beier, Lamay, ICI, and Does 1–10, in their individual capacities, for damages; and against WSDOT and the individual Defendants in their official capacities for declaratory and prospective injunctive relief*

100. Plaintiff realleges and incorporates each preceding paragraph.

101. The Fifth Amendment, applied to the States through the Fourteenth Amendment, forbids the taking of private property for public use without just compensation.

102. A permanent physical occupation of private property is a taking per se, without regard to the public interest advanced or the economic impact on the owner. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). A governmental appropriation of the right to exclude is a per se physical taking. *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021).

103. Defendants physically occupied, stripped, excavated, staked, and fenced portions of the Property lying, as Plaintiff is informed and believes, beyond the boundary of the temporary construction easement, and have permanently altered that ground. No interest in ground beyond the easement boundary was ever acquired by anyone, and no compensation has been paid, offered, or deposited for its occupation.

104. Independently, and regardless of the easement's boundary lines: the interest the State acquired is temporary and expires December 31, 2029, while the works Defendants are constructing are permanent: an enlarged and reconstructed channel, a bridge structure approximately twenty feet in span, permanently installed large woody material, and a permanent

modification of the course and profile of the drainage across the Property, dedicated to receiving State Route 9 highway runoff in perpetuity. A permanent physical occupation cannot be acquired by condemning a temporary easement, and the compensation awarded for a temporary easement does not pay for it. Upon the easement's expiration (indeed, from the moment the permanent works are built), the State will maintain a permanent physical occupation of the Property for which no interest was ever condemned and no compensation was ever fixed or paid.

105. That permanent occupation, and the occupation of ground beyond the easement boundary, are takings per se. *See also United States v. Causby*, 328 U.S. 256 (1946) (government-caused physical invasions effecting a taking); *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987) (even a temporary taking requires compensation for the period of the taking).

106. The claim is ripe. *Knick v. Township of Scott*, 588 U.S. 180 (2019).

107. As a direct and proximate result, Plaintiff has suffered and continues to suffer injury, in an amount to be proven at trial.

COUNT II

42 U.S.C. § 1983, Taking by Recurrent Physical Invasion of Water

(Fifth and Fourteenth Amendments, Thirty Years of Uncompensated Highway Drainage)

*Against Meredith, Beier, Lamay, and Does 1–10, in their individual capacities, for damages; and against WSDOT and the individual Defendants in their official capacities for declaratory and prospective injunctive relief*

108. Plaintiff realleges and incorporates each preceding paragraph.

109. Government-induced invasion of land by water is a taking. *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166 (1871). Recurrent and temporary flooding is not categorically exempt from the Takings Clause. *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23 (2012).

110. By collecting stormwater from the State Route 9 prism, concentrating it, and discharging it through a state-installed cross-culvert onto the Property without easement, permission, permit, or compensation, Defendants have effected and continue to effect a taking of

an interest in the Property: in substance, a drainage easement for which nothing has ever been paid.

111. The invasion is continuing. It recurs with every storm and every discharge event, including events occurring within the limitation period and events occurring after the filing of this Complaint. Each discharge is a separate invasion giving rise to a separate accrual.

112. The project now under construction will perpetuate and enlarge that invasion permanently: an enlarged culvert and an enlarged, reconstructed channel dedicated to conveying the highway's drainage across the Property in perpetuity, built under color of an easement that expires December 31, 2029, and compensated, if at all, only as a temporary construction easement. The condemnation of a temporary right to build did not adjudicate, and did not pay for, a perpetual right to drain.

113. No compensation has ever been paid for that easement, and no proceeding has ever adjudicated it.

114. As a direct and proximate result, Plaintiff has suffered injury including diminution in value, physical damage to soils and vegetation, loss of pasture use, and the permanent alteration of the Property's natural drainage, in an amount to be proven at trial.

COUNT III

42 U.S.C. § 1983, Unreasonable Seizure and Destruction of Property

(Fourth and Fourteenth Amendments, the Sequoia and the Posted Notice)
*Against Meredith, Beier, Lamay, ICI, and Does 1–10, in their individual capacities*

115. Plaintiff realleges and incorporates each preceding paragraph.

116. The Fourth Amendment protects property as well as privacy. A "seizure" of property occurs when there is meaningful interference with an individual's possessory interests in that property, and the Fourth Amendment applies to such a seizure even where no privacy interest and no criminal investigation is involved. *Soldal v. Cook County*, 506 U.S. 56, 61–62, 68–69 (1992).


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

117. Defendants, acting under color of state law and without a warrant, without consent, without any judicial authorization extending to the ground in question, and over Plaintiff's express written objection:

(a) severed and carried away a mature eighty-foot sequoia belonging to Plaintiff;

(b) destroyed a staked sign and the written legal notice affixed to it; and

(c) stripped, excavated, staked, and fenced ground belonging to Plaintiff.

118. Each was a meaningful interference with Plaintiff's possessory interests, and each was objectively unreasonable. Defendants had written notice, had marked ground, had a posted sign, and had a personally notified agency head. They proceeded because a contractor found the tree inconvenient. Convenience is not a Fourth Amendment justification.

119. As a direct and proximate result, Plaintiff has suffered injury in an amount to be proven at trial.

COUNT IV

42 U.S.C. § 1983, Deprivation of Property Without Due Process of Law

(Fourteenth Amendment, Procedural Due Process)

*Against Meredith, Beier, Lamay, and Does 1–10, in their individual capacities; and against WSDOT and the individual Defendants in their official capacities for declaratory and prospective injunctive relief*

120. Plaintiff realleges and incorporates each preceding paragraph.

121. Plaintiff holds constitutionally protected property interests in the Property, in the trees standing upon it, and in the right to exclude others from it.

122. Defendants deprived Plaintiff of those interests, by occupying ground outside any acquired interest, by excavating it, and by cutting the tree, without any notice, hearing, or process of any kind directed to that ground or to that tree. No condemnation proceeding reached it. No order authorized it. No hearing preceded it. Plaintiff was given no opportunity to be heard before the excavator arrived or the saw was started.

123. Where the deprivation is effected pursuant to established state procedures by officials with the authority and the opportunity to provide predeprivation process, and they


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

simply do not, the deprivation violates the Due Process Clause, and the availability of a later damages suit does not cure it. *Zinermon v. Burch,* 494 U.S. 113, 132–39 (1990).

124. Defendants further disregarded Plaintiff's written requests for process: a fourteen-day demand for substantive response to six numbered requests, sent to the Secretary of Transportation on April 7, 2026, produced a one-line acknowledgment and nothing else.

125. As a direct and proximate result, Plaintiff has suffered injury in an amount to be proven at trial.

COUNT V

42 U.S.C. § 1983, Retaliation for Protected Petitioning

(First and Fourteenth Amendments)
*Against Meredith, Beier, Lamay, and Does 1–10, in their individual capacities*

126. Plaintiff realleges and incorporates each preceding paragraph.

127. Plaintiff's letters to the Secretary of Transportation and to Department engineers, his Notice to Cease and Desist, his posted notice on the Property, and his litigation in the courts of this State and this Circuit are all activity protected by the First Amendment right to petition the government for redress of grievances and the right to free speech.

128. Defendants took adverse action against Plaintiff, cutting the very tree he had identified in writing, destroying the very sign to which his written Notice was affixed, and entering the very ground he had told them not to enter.

129. The timing and the specificity of that action support the inference that it was substantially motivated by Plaintiff's protected activity. The tree Plaintiff singled out in writing came down within approximately thirty-two hours. The sign bearing Plaintiff's Notice was pushed over. These were not random acts of construction; they were directed precisely at the objects of Plaintiff's protest.

130. Such action would chill a person of ordinary firmness from continuing to petition and object. *See Nieves v. Bartlett,* 587 U.S. 391 (2019); *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977); *Mendocino Environmental Center v. Mendocino*

*County*, 192 F.3d 1283, 1300–01 (9th Cir. 1999) (elements of a First Amendment retaliation claim under § 1983).

131. As a direct and proximate result, Plaintiff has suffered injury in an amount to be proven at trial.

COUNT VI

42 U.S.C. § 1983, Arbitrary and Pretextual State Action

(Fifth and Fourteenth Amendments, Public Use and Substantive Due Process)

*Against Meredith, Beier, Lamay, and Does 1–10, in their individual capacities; and for declaratory relief against all Defendants*

132. Plaintiff realleges and incorporates each preceding paragraph.

133. The Takings Clause permits the taking of private property only for a public use. A stated public purpose that is a pretext for another objective does not satisfy that requirement. *See Kelo v. City of New London*, 545 U.S. 469, 477–78, 490–91 (2005) (O'Connor, J., dissenting; Kennedy, J., concurring) (pretextual purposes remain subject to review).

134. The stated purpose here, restoration of salmon habitat in a tributary to Nookachamps Creek, rests on a watercourse that does not naturally exist. The only water on the alignment is water WSDOT itself discharged onto private land, unlawfully and without compensation, for more than thirty years.

135. Those funds are public. The Project is financed with combined federal and state money. On information and belief, no Defendant possesses a survey, map, hydrologic study, fish use survey, or other record establishing that a natural watercourse ever crossed the Property, that live water other than the Department's own highway discharge ever flowed there, or that a salmon ever traversed the feature the Department calls an unnamed tributary. Plaintiffs plead these facts not as an independent claim for misuse of public funds, but because a stated public purpose unsupported by any evidence in the proponent's own files is a pretextual one.

136. The actual purpose and effect is to resolve the Department's own highway drainage obligation, and to legitimate its long-standing unauthorized discharge, on private land and at private expense, under an environmental label.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

137. Government conduct that manufactures the very condition it then invokes to justify taking a citizen's land, and that strips and excavates ground it never acquired after being told in writing not to, is arbitrary in the constitutional sense and shocks the conscience.

138. As a direct and proximate result, Plaintiff has suffered injury in an amount to be proven at trial.

COUNT VII

42 U.S.C. § 1983, Joint Action and Conspiracy Under Color of State Law
*Against Interwest Construction, Inc., and Does 1–10*

139. Plaintiff realleges and incorporates each preceding paragraph.

140. ICI is a private corporation. It nonetheless acted under color of state law by willfully participating in joint action with WSDOT and its officials, pursuant to state authority, state direction, and a state contract, in occupying and excavating land the State had not acquired and in cutting a tree the State had been told in writing not to touch. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139–40 (9th Cir. 2012) (private entity acts under color of state law when it is a willful participant in joint action with the State).

141. ICI and the individual Defendants reached an understanding, express or tacit, to proceed with the work notwithstanding Plaintiff's written objections, the posted notice, and the marked dripline, and each performed overt acts in furtherance of that understanding, including the entry of July 2, 2026, the destruction of the posted sign, and the cutting of the tree.

142. ICI has no Eleventh Amendment immunity and is a "person" within the meaning of 42 U.S.C. § 1983.

143. As a direct and proximate result, Plaintiff has suffered injury in an amount to be proven at trial.

COUNT VIII

Declaratory Judgment, 28 U.S.C. §§ 2201–2202
*Against all Defendants*

144. Plaintiff realleges and incorporates each preceding paragraph.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

145. An actual, present, and justiciable controversy exists between Plaintiff and Defendants concerning the existence and extent of any right of Defendants to enter, occupy, excavate, or discharge water upon the Property.

146. Plaintiff is entitled to a declaration that:

(a) WSDOT holds no easement, prescriptive right, license, or other interest authorizing the discharge of State Route 9 highway drainage onto Parcel P1-25360;

(b) the discharge of highway drainage onto the Property without an acquired interest and without compensation constitutes a taking of private property in violation of the Fifth and Fourteenth Amendments;

(c) no federal injunction entered in *United States v. Washington*, and no judgment of the Skagit County Superior Court, authorizes Defendants to enter, occupy, or excavate any portion of the Property lying outside the state right of way and outside the boundary of the temporary construction easement described in the easement description attached to the Judgment and Decree of Appropriation (Exhibit A hereto);

(d) the temporary construction easement, which terminates December 31, 2029, does not and cannot authorize the construction or maintenance of permanent works upon the Property, including a permanent reconstructed channel dedicated to conveying State Route 9 drainage, and any such permanent occupation without a lawfully acquired and compensated permanent interest violates the Fifth and Fourteenth Amendments; and

(e) Defendants' entry upon, excavation of, and destruction of vegetation and trees upon land outside any acquired interest, and their conduct in excess of the scope and conditions of the interest acquired, was and is unlawful.

COUNT IX

Prospective Injunctive Relief, *Ex parte Young*
*Against WSDOT and against Meredith, Beier, and Lamay in their official capacities*

147. Plaintiff realleges and incorporates each preceding paragraph.

148. Defendants are engaged in an ongoing violation of federal law: the continuing physical occupation of private property without compensation, and the continuing uncompensated discharge of highway drainage. Plaintiff seeks relief that is prospective only. *Ex parte Young*, 209 U.S. 123 (1908); *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002). The standards governing the preliminary relief sought are those of *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), and *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

149. Plaintiff has no adequate remedy at law for the continuing invasion of the right to exclude. Damages assessed after the fact do not restore a homestead, do not replace an eighty-foot tree, and do not undo an excavated channel. The injury is immediate, actual, and irreparable, and it enlarges with every day the work continues.

150. The balance of equities and the public interest favor relief that is narrowly confined to keeping Defendants on land they lawfully hold. Such relief does not delay the correction of any barrier beneath State Route 9, and does not conflict with any order of any court.

COUNT X

Trespass

*Against Interwest Construction, Inc., Does 1–10, and Meredith, Beier, and Lamay in their individual capacities only*

151. Plaintiff realleges and incorporates each preceding paragraph. This count is pleaded under 28 U.S.C. § 1367 and is not asserted against the Department or against any Defendant in an official capacity.

152. Plaintiff was and is in lawful possession of the Property. Defendants intentionally entered upon it, and caused equipment, materials, stakes, and fencing to enter upon it, without permission and without any legal right to do so. *See Bradley v. American Smelting & Refining Co.*, 104 Wn.2d 677, 709 P.2d 782 (1985) (elements of trespass under Washington common law).

153. The trespass is continuing and is aggravated: Defendants had written notice, a posted sign, and a marked dripline, and they destroyed the sign in the course of the entry.


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

154. Plaintiff is entitled to damages, to restoration, and to injunctive relief against the continuing trespass.

COUNT XI

Statutory Timber Trespass, RCW 64.12.030
*Against Interwest Construction, Inc., Does 1–10, and Meredith, Beier, and Lamay in their individual capacities only*

155. Plaintiff realleges and incorporates each preceding paragraph.

156. RCW 64.12.030 provides that a person who cuts down, girdles, or otherwise injures, or carries off, a tree on the land of another without lawful authority is liable to the owner in treble the amount of damages assessed.

157. Defendants cut down and carried off Plaintiff's mature sequoia, standing approximately eighty feet tall on the Rindal homestead, without lawful authority.

158. The measure of damages includes the cost of restoration. *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 942 P.2d 968 (1997); *see also Broughton Lumber Co. v. BNSF Railway Co.*, 174 Wn.2d 619, 278 P.3d 173 (2012) (the timber trespass statute is punitive in purpose and deters willful cutting); *Pendergrast v. Matichuk*, 186 Wn.2d 556, 379 P.3d 96 (2016) (applying the statute's treble-damages remedy).

159. The mitigation to single damages available under RCW 64.12.040 for a casual or involuntary trespass, or for a trespass committed under a probable belief of right, is unavailable to Defendants. Defendants received written notice by mail and by electronic mail; the dripline was physically marked on the ground; a NO TRESPASSING sign bearing a written Notice to Cease and Desist was posted and was pushed over by Defendants; and the Secretary of Transportation was personally notified and declined to stop the work. The cutting was deliberate, and it occurred within approximately thirty-two hours of that notice.

160. Plaintiff is entitled to treble damages under RCW 64.12.030.

COUNT XII

Waste and Injury to Land, RCW 4.24.630
*Against Interwest Construction, Inc., Does 1–10, and Meredith, Beier, and Lamay in their individual capacities only*

161. Plaintiff realleges and incorporates each preceding paragraph.

162. RCW 4.24.630(1) provides that every person who goes onto the land of another and who wrongfully causes waste or injury to the land, or who wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused, together with reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs. The statute expressly reaches one who "removes timber, crops, minerals, or other similar valuable property from the land."

163. Defendants went upon the Property wrongfully, removed timber from it, removed and displaced soil and substrate from it, destroyed native vegetation upon it, and destroyed improvements and personal property upon it, including the staked sign and affixed Notice.

164. Defendants acted wrongfully within the meaning of the statute: they knew, or had reason to know, that they lacked authorization to enter or to cut. The written notices, the marked dripline, the seventeen posted signs, and the direct notification of the Secretary of Transportation establish that knowledge. The posted Notice, affixed to all seventeen stakes across the road frontage, specifically warned, in terms Defendants cannot claim to have missed, that removal of soil, gravel, rock, minerals, or substrate would be treated as mineral trespass; the statute's own words reach one who "removes timber, crops, minerals, or other similar valuable property from the land"; and Defendants' response to that warning was to push the signage over and dig.

165. Plaintiff is entitled to treble damages, restoration costs, investigative costs, and reasonable attorneys' fees and litigation costs under RCW 4.24.630.

COUNT XIII

Continuing Nuisance

*Against Interwest Construction, Inc., Does 1–10, and Meredith, Beier, and Lamay in their individual capacities only*

166. Plaintiff realleges and incorporates each preceding paragraph.

167. The continuing discharge of concentrated highway stormwater, sediment, and roadway pollutants onto the Property, and the continuing construction activity upon land


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

Defendants have no right to occupy, unreasonably interfere with Plaintiff's use and enjoyment of his homestead.

168. The interference is continuing and abatable, and each day of its continuation gives rise to a fresh claim.

169. Plaintiff is entitled to damages and to abatement.

## VII. ANTICIPATED DEFENSES ADDRESSED ON THE FACE OF THE PLEADING

170. Eleventh Amendment and *Will*. Plaintiff seeks no damages from the Department or from any official in an official capacity. Damages are sought only from the individual Defendants personally and from ICI, a private corporation. *Hafer v. Melo,* 502 U.S. 21, 30–31 (1991) (state officials sued in their individual capacities are "persons" under § 1983, and the Eleventh Amendment does not bar such suits). Relief sought against the Department and against officials in their official capacities is declaratory and prospective only, precisely what *Ex parte Young* permits.

171. *Pennhurst*. The state-law counts are asserted only against ICI, against Does, and against the individual Defendants in their individual capacities. They are not asserted against the State, the Department, or any official capacity.

172. *Rooker-Feldman* and preclusion. Addressed at Paragraphs 24 through 29. Plaintiffs seek no review of any state judgment. As to claim preclusion from the prior federal actions: No. 2:26-cv-971 was dismissed and closed by judgment entered April 16, 2026, without any adjudication addressed to conduct occurring after that date. The entry of July 2, 2026, the cutting and removal of the sequoia, the excavation of the stump, the destruction of the posted notices, and every highway discharge occurring after April 16, 2026 postdate that judgment. Preclusion does not bar claims that arise from events occurring after the earlier judgment was entered; those claims did not exist to be litigated. To the extent any Defendant contends otherwise as to any portion of Count II, Plaintiffs plead the drainage claim in the alternative as limited to invasions


Steven M. Rindal and Dorothy J. Rindal, Pro Per · 15461 State Route 9, Mount Vernon, WA 98273

occurring after April 16, 2026, each of which is a separate accrual, and to the permanent works now under construction.

173. Limitations. Section 1983 borrows Washington's three-year personal injury limitation, RCW 4.16.080(2). The occupation, the entry, the destruction of the sign, and the cutting of the tree all occurred in July 2026. The drainage claim rests on a continuing invasion, each recurrence of which gives rise to a separate accrual, and Plaintiff limits that claim to invasions occurring within the limitation period and continuing to the present.

174. Qualified immunity. The rights at issue (to be free from uncompensated physical occupation of one's land, and from the warrantless destruction of one's property) were clearly established long before July 2, 2026. *Loretto* (1982); *Soldal* (1992); *Cedar Point Nursery* (2021); *Knick* (2019). No reasonable official could believe that a court order to fix a culvert under a highway authorized entering a homestead 150 feet beyond the right of way and felling a marked tree after written notice. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (officials can be on notice that conduct violates established law even in novel factual circumstances); *United States v. Lee*, 106 U.S. 196 (1882) (officers of the government who occupy private property without lawful authority are answerable to the owner, and the government's own claim of right is no shield).

175. The federal injunction. Addressed at Paragraphs 57 through 63 and Paragraph 27. Compliance with an order to correct barriers under state-maintained roads is neither a license to trespass nor a defense to the Takings Clause.

176. The lawful-acquisition defense. Defendants will contend, as the Attorney General's July 7, 2026 letter contends, that the condemnation judgment forecloses any trespass or takings claim because the State "lawfully acquired" the necessary rights. The doctrine on which that contention rests protects a condemnor acting within the rights it acquired. It does not immunize entry beyond the easement's boundaries; uses in excess of the easement's scope and express written conditions; the felling of a marked tree over written protest; or the construction of permanent works designed to outlive the temporary right under color of which they are built.

What the State bought was 55,404 square feet, temporarily, on conditions, expiring December 31, 2029. This Complaint is about everything the State did not buy.

177. Prescription and the pre-1979 culvert. Defendants may contend that because the cross-culvert predates Plaintiffs' 1979 acquisition, the drainage claim is time barred or that the State long ago acquired a right by prescription. Neither answer holds. The State has never asserted a prescriptive easement and has never recorded one, and in 2024 it condemned rights in this very Property, which a holder of existing rights has no reason to do; the Attorney General's July 7, 2026 letter rests the State's authority solely on the condemnation judgment. Plaintiffs' claim is for continuing invasions within the limitation period, not for the original installation. And the Project now materially enlarges the burden, replacing the culvert with a larger one and building permanent works to carry a greater flow in perpetuity, which no historical practice and no lapse of time authorizes.

178. Acceptance and acquiescence. Plaintiff has never withdrawn, accepted, or cashed any portion of the $51,000 deposited into the Superior Court registry, has preserved his jurisdictional objections by special appearance, and is prosecuting an appeal in the Washington Court of Appeals. No waiver, acceptance, or acquiescence can be asserted against him.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A. Temporary and preliminary injunctive relief. Enter a temporary restraining order and thereafter a preliminary injunction, under Fed. R. Civ. P. 65, enjoining Defendants and all persons acting in concert or participation with them, pending final judgment, from: (i) entering upon, occupying, disturbing, excavating, clearing, staking, fencing, or placing equipment or materials upon any portion of the Property lying outside the Washington State Department of Transportation right of way and outside the boundary of the temporary construction easement described in the easement description attached to the Judgment and Decree of Appropriation entered June 16, 2025 in Skagit County Superior Court No. 24-2-00898-29 (Exhibit A hereto);

What the State bought was 55,404 square feet, temporarily, on conditions, expiring December 31, 2029. This Complaint is about everything the State did not buy.

177. Prescription and the pre-1979 culvert. Defendants may contend that because the cross-culvert predates Plaintiffs' 1979 acquisition, the drainage claim is time barred or that the State long ago acquired a right by prescription. Neither answer holds. The State has never asserted a prescriptive easement and has never recorded one, and in 2024 it condemned rights in this very Property, which a holder of existing rights has no reason to do; the Attorney General's July 7, 2026 letter rests the State's authority solely on the condemnation judgment. Plaintiffs' claim is for continuing invasions within the limitation period, not for the original installation. And the Project now materially enlarges the burden, replacing the culvert with a larger one and building permanent works to carry a greater flow in perpetuity, which no historical practice and no lapse of time authorizes.

178. Acceptance and acquiescence. Plaintiff has never withdrawn, accepted, or cashed any portion of the $51,000 deposited into the Superior Court registry, has preserved his jurisdictional objections by special appearance, and is prosecuting an appeal in the Washington Court of Appeals. No waiver, acceptance, or acquiescence can be asserted against him.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A. Temporary and preliminary injunctive relief. Enter a temporary restraining order and thereafter a preliminary injunction, under Fed. R. Civ. P. 65, enjoining Defendants and all persons acting in concert or participation with them, pending final judgment, from: (i) entering upon, occupying, disturbing, excavating, clearing, staking, fencing, or placing equipment or materials upon any portion of the Property lying outside the Washington State Department of

Transportation right of way and outside the boundary of the temporary construction easement described in the easement description attached to the Judgment and Decree of Appropriation entered June 16, 2025 in Skagit County Superior Court No. 24-2-00898-29 (Exhibit A hereto); (ii) cutting, removing, or damaging any tree or vegetation on any such portion; and (iii) constructing upon any portion of the Property any permanent channel, structure, or works intended or designed to remain in place after the December 31, 2029 termination of that easement, unless and until a permanent interest authorizing such works has been lawfully acquired and just compensation for it paid;

B. Permanent injunction, restoration, and abatement. Enter a permanent injunction to the same effect, and further: (i) requiring Defendants to restore, at their expense, the portions of the Property unlawfully disturbed, including restoration of the ground to its original grades, contours, and levels as they existed before the disturbance; and (ii) requiring Defendants to abate the unauthorized discharge of State Route 9 highway drainage onto the Property. Defendants may accomplish that abatement by any lawful means, including by closing or removing the discharge onto the Property from the existing cross-culvert and instead intercepting the collected stormwater before it crosses beneath State Route 9 and conveying it within the State's own right of way and easements until it reaches Nookachamps Creek by normal drainage avenues off the Property, or by lawfully acquiring, and paying just compensation for, a drainage interest in the Property. The choice among lawful means rests with Defendants; what Plaintiffs ask the Court to forbid is the continued discharge of the highway's drainage onto the Property through an interest the State has never acquired and never paid for;

C. Declaratory judgment. Declare the rights of the parties as set forth in Count VIII;

D. Just compensation and damages. Award just compensation and compensatory damages against the individual Defendants and ICI in an amount to be proven at trial, including the value of the property taken, diminution in value of the remainder, restoration and remediation costs, the value of and cost of replacing the sequoia, and damage to soils, vegetation, improvements, and pasture;

E. Treble damages. Award treble damages under RCW 64.12.030 and under RCW 4.24.630, together with restoration costs and investigative costs;

F. Punitive damages. Award punitive damages against the individual Defendants and ICI as permitted under 42 U.S.C. § 1983 for conduct involving reckless or callous indifference to Plaintiff's federally protected rights;

G. Attorneys' fees and costs. Award reasonable attorneys' fees, litigation expenses, and costs under 42 U.S.C. § 1988 and RCW 4.24.630, and, Plaintiffs appearing pro per, award all costs, expenses, and out-of-pocket disbursements permitted by law, including but not limited to filing fees, service fees, surveying costs, expert fees, and investigative costs;

H. Prejudgment and postjudgment interest as allowed by law;

I. Preservation. Enter an order directing Defendants to preserve all evidence relating to the works, including without limitation equipment GPS and telematics data, daily reports, inspection records, staking records, photographs, and all communications concerning the sequoia and concerning Plaintiff's notices; and

J. Such other and further relief as the Court deems just and equitable.

## IX. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

DATED this ____ day of ______________, 2026, at Mount Vernon, Washington.

Respectfully submitted,

Steven M. Rindal
In Propria Persona
15461 State Route 9
Mount Vernon, WA 98273

Dorothy J. Rindal
In Propria Persona
15461 State Route 9
Mount Vernon, WA 98273

VERIFICATION

We, Steven M. Rindal and Dorothy J. Rindal, each declare under penalty of perjury under the laws of the United States of America that we are the Plaintiffs in the above-entitled action; that each of us has read the foregoing Complaint; and that the factual allegations contained in it are true and correct of our own knowledge, except as to those matters stated on information and belief, and as to those matters we believe them to be true.

Executed on July 3, 2026, at Mount Vernon, Washington.

Steven M. Rindal

Dorothy J. Rindal

**EXHIBIT LIST**

**Exhibit A**, Judgment and Decree of Appropriation entered June 16, 2025 in Skagit County Superior Court No. 24-2-00898-29, together with the easement description attached to it and the recorded Temporary Easement Exhibit map dated November 23, 2022

**Exhibit B**, Letter of Assistant Attorney General Carly R. Johnson to Steven M. Rindal and Dorothy J. Rindal dated July 7, 2026, with all enclosures, including the materials the Department identifies as its sight distance analysis for the relocated driveway

**Exhibit C**, Photographs taken July 2, 2026: the property line at the barn front showing fencing and cleared ground; stripped ground approximately fifty yards inside the property line; and a Caterpillar 305.5E2 excavator with hydraulic breaker, unit marking 06-124, on the Property

**Exhibit D**, Photographs of the seventeen staked NO TRESPASSING signs posted across the State Route 9 frontage, each bearing an affixed copy of the March 21, 2026 Notice to Cease and Desist and each tagged with fluorescent orange surveyor's tape, and of the pushed-over signage after July 2, 2026

**Exhibit E**, Photographs of the sequoia standing, marked, and fenced before the cutting; of the "NOTICE - PROTECTED TREE - GIANT SEQUOIA" placard posted on a stake at the tree; of the stump and root plate before their removal; and of the single salvaged wedge of wood, the only physical remnant of the tree remaining in Plaintiffs' possession

**Exhibit F**, Photographs of the railroad tram embankment in its present condition, densely overgrown, taken from Plaintiffs' property

**Exhibit G**, Photograph of a WSDOT or contractor construction survey stake marked "HV5F BEG" driven adjacent to Plaintiffs' posted NO TRESPASSING signage, with Defendants' excavator on the Property in the same frame

**Exhibit H**, Notice to Cease and Desist and Demand for Evidence Preservation dated March 21, 2026

**Exhibit I**, Letter to Julie Meredith, P.E., Secretary of Transportation, dated April 7, 2026, with certified mail receipt no. 9589 0710 5270 3138 1758 07

**Exhibit J**, Email reply of Secretary Julie Meredith dated April 10, 2026, 2:35 PM

**Exhibit K**, Emergency stand-down letter to Secretary Meredith dated July 3, 2026, with photograph enclosures

**Exhibit L**, Notification of Work Start Date issued by Spencer Beier, P.E., dated April 3, 2026

**Exhibit M**, Letter of Mikkel Lamay, P.E., dated August 6, 2025

**Exhibit N**, Notice read into the record of the February 26, 2024 hearing in the condemnation matter, signed by Steven M. Rindal and sworn under 28 U.S.C. § 1746, stating that "the State of Washington has not notified a third party with interest in the land in question, specifically JA77 Trust," identifying the Trust as located at "Charlestown, Nevis, West indies, Saint Paul Parish," and stating that the failure to notify the Trust "is a serious oversight that must be rectified immediately"

**Exhibit O**, Mineral and Royalty Interest Deed from Steven M. Rindal and Dorothy J. Rindal to the JA77 Trust of Charlestown, executed and notarized February 20, 2024